1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF
WASHINGTON AT TACOMA

| | |
|---|---|
| C.F. by and through his parent, ERICA DRIGGERS, W.M. by and through his parent, DESIREE PRESNELL, O.S. by and through his parent, LINDSEY TOPPING-SCHUETZ, J.P. by and through his parent, JESSICA MORROW, W.J. by and through his parent, DESIREE PRESNELL, individually and on behalf of a class,<br><br>               Plaintiffs,<br><br>v.<br><br>RYAN MORAN, in his official capacity as Director of the Washington State Health Care Authority,<br>               Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF ON BEHALF OF PURPORTED FED. R. CIV. P. 23 CLASS** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

COME NOW the Plaintiffs, by and through their attorneys, Albert Law PLLC and Robert H. Farley, Jr., Ltd., and file the following complaint against the Defendant as follows:

## I.     INTRODUCTION

1.      This is an action for declaratory and injunctive relief to enforce the rights of Plaintiffs and the purported Class under the EPSDT and reasonable promptness provisions of the Medicaid Act, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

2.      Almost one decade ago, four children with complex health needs were unable to receive all of their approved private duty nursing services. They obtained a preliminary injunction against the Washington State Health Care Authority and others, requiring the defendants to "take all actions within their power necessary for Plaintiffs to receive 16 hours per day of private duty nursing, as previously authorized by Defendants." *A.H.R. v. Washington State Health Care Authority*, 469 F. Supp. 3d 1018, 1050 (W.D. Wash. 2016). Unfortunately, this same problem continues today for those Plaintiffs and Class members approved for Private Duty Nursing ("PDN") services who are not receiving PDN services at the level approved by the Defendant. That problem also persists for those Plaintiffs and Class members approved for Personal Care ("PC") services who are not receiving PC services at the level approved by the Defendant.

3.      Medicaid-enrolled children residing in the State of Washington with disabling and chronic health conditions bring this suit to challenge the Defendant's failure to arrange for PDN services and PC services.

4.      The Defendant acknowledges that PDN services are medically necessary for Plaintiffs C.F., W.M., O.S., and the Class members approved of PDN services. The Defendant admits that these PDN services are provided as an alternative to

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

institutionalization in a hospital or nursing facility.

5.     The Defendant acknowledges that PC services are medically necessary for Plaintiffs J.P., W.J., and the purported Class members approved for personal care services in the Community First Choice ("CFC") program. The Defendant admits that the CFC program serves persons living outside of a medical institution who meet a nursing facility level of care.

6.     Despite having been found eligible by the Defendant for PDN services and/or PC services to be provided in their homes, Plaintiffs and purported Class members are unable to obtain the approved services due to the Defendant's failure to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [nursing services]" as mandated by the federal Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of the Medicaid Act pursuant to 42 U.S.C. § 1396a(a)(43)(C). The Defendant also violates 42 U.S.C. § 1396a(a)(8), which requires that medical assistance "shall be furnished with reasonable promptness to all eligible individuals." In addition, the Defendant violates the Americans with Disabilities Act (ADA), the Rehabilitation Act, and other provisions of the Medicaid Act by failing to arrange for the delivery of PDN and PC services, creating a serious risk of institutionalization for the Plaintiffs and the Class.

7.     This purported class action does not ask the Court to set or establish a specific hourly rate or remedy for PDN or PC services. Rather, Plaintiffs seek an order requiring the Defendant to take immediate and affirmative steps to arrange for the delivery of PDN and PC services to Plaintiffs and the Class, leaving implementation to the Defendant.

## II.     PARTIES

8.     Plaintiff C.F. is six years old and requires 24/7 care. He is ventilator-dependent,

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

tracheostomy-dependent, and gastrostomy tube-dependent. C.F. is approved for 16 hours per day (112 hours per week) of PDN services but has been able to obtain only approximately 37 hours per week of PDN services for the past one and one-half years. C.F. has been unable to locate PDN providers to fulfill all approved hours and faces a serious risk of institutionalization as a result.

9.      Plaintiff W.M. is three years old and requires a tracheostomy to maintain a stable airway due to multilevel airway obstruction. He requires frequent suctioning up to 20 times per day. W.M. lived in an institution (hospital and skilled care facility) from birth through his first two and one-half years of life because no PDN services were available to allow him to live at home. W.M. could have been discharged from the hospital at approximately three months of age if sufficient PDN services had been available. He was approved for 372 hours per month of PDN services but was unable to locate PDN providers to fulfill all approved hours and has received no PDN services since January 2025. In June 2025, W.M. was approved to exchange 360 hours of PDN services for PC services in the CFC program to receive some assistance at home. He currently receives approximately 180 hours per month of PC services and has been unable to locate PC providers to fulfill all approved hours. PC services are not a medical substitute for PDN services. W.M. has been hospitalized multiple times since living at home without PDN services and faces a serious risk of institutionalization.

10.     Plaintiff O.S. is nine years old and has Cri du Chat syndrome, feeding difficulties, GERD, severe gut dysmotility, GJ-tube feeds, constipation, diarrhea, SIBO, global developmental delays, hip dysplasia, progressive scoliosis, and cerebellar hypoplasia. O.S. receives nutrition and medication through a G-tube, with his feeding pump running approximately 17 hours per day. O.S. is non-speaking, uses a wheelchair, requires 24/7 care, and needs full assistance with all activities of daily living. He is approved for 56 hours per

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

week of PDN services and 232 hours per month of PC services as a substitute for PDN. Since March 2022, O.S. has been able to obtain only approximately 25 hours of PDN services per week and approximately 24 hours of PC services per week due to provider shortages. O.S. faces a serious risk of institutionalization.

11.     Plaintiff J.P. is sixteen years old and has cerebral palsy, developmental delay, intermittent explosive disorder, oppositional defiant disorder, fecal smearing behaviors, and wears diapers. J.P. requires assistance with activities of daily living and behavioral management, including biting and kicking family members. He is approved for 73 hours per month of PC services in the CFC program and has obtained zero hours of PC services since 2020 due to an inability to locate providers. J.P. faces a serious risk of institutionalization.

12.     Plaintiff W.J. is ten years old and has post-traumatic stress disorder (PTSD), ADHD, and autism. He requires assistance with activities of daily living and behavioral support. W.J. is approved for 28 hours per month of PC services in the CFC program and has obtained zero hours of PC services since approval in July 2025 due to provider unavailability. He faces a serious risk of institutionalization.

13.     Defendant Ryan Moran is the Director of the Washington State Health Care Authority (HCA). He is responsible for supervision and oversight of HCA's medical programs and ensuring compliance with federal law. He is being sued in his official capacity.

### III.     JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. §1983 to redress the deprivation of rights, privileged, or immunities guaranteed by the United States Constitution and Acts of Congress. The Plaintiffs and purported Class claim for declaratory and injunctive

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 5**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

relief are authorized pursuant to 28 U.S.C. §§ 2201–2202, 42 U.S.C. § 1983, and Fed. R. Civ. P. 65.

15.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in that District, and Defendant Moran performs his official duties in that District.

## IV.     STATEMENT OF FACTS

### a.  Legal Framework

#### i.        Medicaid Act and Implementing Regulations

16.     The Medicaid Act, Title XIX of the Social Security Act, and 42 U.S.C. §§ 1396–1396w-5, establish a medical assistance program cooperatively funded by the federal and state governments. Medicaid is designed to "enabl[e] each State, as far as practicable . . . to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence and self-care . . ." 42 U.S.C. § 1396-1.

17.     Medicaid does not directly provide health care services or funds to beneficiaries. Rather, Medicaid reimburses participating providers, including in-home personal care and nursing providers, for services delivered to recipients.

18.     At the federal level, Medicaid is administered by the Centers for Medicare and Medicaid Services (CMS), which publishes binding rules and guidelines at 42 C.F.R. §§ 430.0–483.480 and in the State Medicaid Manual.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 6

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

19.     Although participation in Medicaid is voluntary, participating states must comply with federal requirements. Washington State receives approximately fifty cents in federal reimbursement for every dollar it spends on Medicaid services.

20.     Participating states must adopt a Medicaid plan that meets federal requirements and submit amendments to CMS for approval. 42 U.S.C. § 1396; 42 C.F.R. § 430.12.

21.     States must designate a single state agency to administer the Medicaid plan. 42 U.S.C. § 1396a(a)(5). Washington's single state agency is the Washington State Health Care Authority (HCA).

22.     The Medicaid Act requires, among other things:

- 42 U.S.C. § 1396a(a)(8) provides that the Medicaid-covered services shall be delivered with reasonable promptness. That must happen "without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).
- 42 U.S.C. § 1396a(a)(10)(B) provides that services delivered to Medicaid recipients shall not be less in amount, duration, and scope than those available to other similarly eligible recipients Comparable services for similarly situated recipients, 42 U.S.C. § 1396a(a)(10)(B).
- 42 U.S.C. § 1396a(a)(30) provides that reimbursement rates must be sufficient to enlist enough providers so that Medicaid beneficiaries have access to care and services at least to the extent that such care and services are available to the general population in the geographic area.
- 42 U.S.C. § 1396u-2(b)(5) provides that the single state agency must receive adequate assurance from each Medicaid managed care organization that they can offer an appropriate range and access to Medicaid services, including by maintaining a sufficient number, mix, and geographic distribution or providers of services.

23.     In addition, the Medicaid Act at 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), and 1396d(r), requires outreach, screening and treatment of children under the age of 21 with respect to certain medical services. Those statutory sections are known collectively as the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") mandate.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

24.     Even when a particular service or treatment is not provided for Medicaid-eligible adults, the state must nevertheless provide that service or treatment for children if it is otherwise covered and reimbursed by the federal Medicaid program.  42 C.F.R. § 441.57. That includes "optional" services listed under 42 U.S.C. § 1396d(a).

25.     The federal EPSDT mandate requires the Defendant to provide or arrange for the provision of covered services for Medicaid-eligible children.  A state plan for medical assistance must "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening devices." 42 U.S.C. § 1396a(a)(43)(C).

26.     Under the EPSDT mandate, states must provide all the services listed in 42 U.S.C. § 1396d(a) when needed to correct or ameliorate a behavioral, emotional, psychiatric, and physical condition as determined by child health screening services.  Among the services listed in 1396d(a) are home health care services, 42 U.S.C. § 1396d(a)(7) and 42 C.F.R. § 440.70; private duty nursing services, 42 U.S.C. § 1396d(a)(8) and 42 C.F.R. § 440.80; rehabilitative services, 42 U.S.C. § 1396d(a)(13) and 42 C.F.R. § 440.130; and personal care services, 42 U.S.C. 1396d(a)(24) and 42 C.F.R. § 440.167.

27.     In order to provide those required services, "[t]he [Medicaid] agency must make available a variety of individual and group providers qualified and willing to provide EPSDT services." 42 C.F.R. Sec. 441.61(b).

**ii.     The Washington Medicaid Program**

28.     The Washington State Health Care Authority is the single state agency that administers the Medicaid program in Washington, created to "administer the medical services program . . . as the designated single state agency for purposes of Title XIX of the federal social security act."  RCW 41.05.021(1)(m).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

29.     As stated above, the single state agency is responsible for administration of a state plan consonant with the requirements of the Medicaid Act, including the EPSDT mandate.  The HCA is responsible for providing all medically necessary services, including §1396d(a) "optional" services, to Medicaid-eligible children under the age of 21.

**iii.     The Americans with Disabilities Act (ADA) and Implementing Regulations**

30.     Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

31.     Regulations implementing Title II of the ADA provide, "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."  28 C.F.R. § 35.130(a).

**iv.     Section 504 of the Rehabilitation Act and Implementing Regulations**

32.     Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), on which the ADA is modeled, sets forth similar protections against discrimination by recipients of federal funds, such as the Defendant.  29 U.S.C. § 794-794a.  These protections including the prohibition against unnecessary segregation of people with disabilities.  Regulations implementing the Rehabilitation Act require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities.  28 C.F.R. Sec. 41.51(d).

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

**b.    Washington Application of the Legal Framework**

   **i.    EPSDT Mandate**

33.    As Director of Washington State Medicaid agency, the Defendant is federally mandated to provide private duty nursing services to Medicaid-eligible children and young adults under the age of 21 when such services are "necessary . . . to correct or ameliorate defects and physical and mental illness and conditions . . ." of a Medicaid-eligible child.  42 U.S.C. § 1396d(r)(5).

34.    The federal EPSDT mandate obligates Defendant to ensure that medically necessary services are available, accessible and provided, either by providing them directly or by arranging for them through "appropriate agencies, organizations, or individuals[.]" 42 U.S.C. § 1396a(a)(43).   The Defendant must either provide in-home shift nursing or private duty nursing directly or coordinate with others to do so.

   **ii.    Washington State's Medicaid Plan Purportedly Provides Private Duty Nursing to Children 17 Years of Age and Younger**

35.    Washington State's Medicaid Plan provides private duty nursing services. The Medicaid Plan states:

> The purpose of the Private Duty Nursing (PDN) Program is to reduce the cost of healthcare services through equally effective, more conservative, and/or less costly treatment in a client's home. . . . Eligible clients must meet all of the following:  be 17 years of age or younger, need continuous skilled nursing care that can be provided safely outside an institution. . . . PDN program services for those 18 and older . . . are indistinguishable from services for those under age 18.
> PDN services meet complex medical needs for persons who require at least four continuous hours of skilled nursing care on a day-to-

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

1    day basis.  Services provide alternatives to institutionalization in a
     hospital or nursing facility. . . . [1]

2

3        36.    Private Duty Nursing services for children ages 17 and younger "helps to keep

4    families together by providing equally effective, less restrictive, and less costly treatment in

     a client's home for children who would otherwise require institutional level of care."[2]

5

6        37.    The Medically Intensive Children's Program (MICP) provides skilled nursing

7    services to children ages 17 and younger.  These children have complex medical needs (exam

     requires ventilator dependent, tracheostomy care), that require a registered nurse to provide

8    support and the child requires at least four hours of continuous skilled nursing care per day.

9    The MICP program greatly reduces the cost of in-patient hospital care where these children

10   would be cared for without this program.  Approximately 200 children are supported through

11   the MICP program.[3]

12        iii.    **Washington State Provides Private Duty Nursing to Persons 18 Years of
                  Age and Over**

13

14        38.    Private Duty Nursing (PDN) is a program that provides in-home skilled nursing

     care to Medicaid clients 18 years of age and over who would otherwise be served in a

15   Medicaid Medical Institution (MMI).  PDN is an alternative to institutional care.  The purpose

16   of the PDN program is to provide community-based alternatives to institutional care for

17   clients who have complex medical needs like ventilators, tracheostomies, feeding tubes or

18   continuous IV infusions and require skilled nursing care on a continuous and daily basis. The

19   PDN program allows clients the option to remain at home so that they can stay connected

20

21   _____

22   [1] https://www.hca.wa.gov/assets/program/SP-Att-3-Services-General-Provisions.pdf
23   [2] https://www.hca.wa.gov/assets/billers-and-providers/Private-duty-nursing-bg-
     20251001.pdf
24   [3] https://www.hca.wa.gov/assets/free-or-low-cost/MICP-fact-sheet.pdf

25   **COMPLAINT FOR DECLARATORY AND                      ALBERT LAW PLLC
     INJUNCTIVE RELIEF - 11**                        3131 Western Avenue, Suite 410
                                                          Seattle, WA 98121
                                                        Phone: (206) 576-8044

with their families, their community and remain in the environment they feel is most familiar and comfortable to them.[4]

    **iv.    Washington State Provides Private Duty Nursing to Children and Adults in Medicaid Waiver Programs**

    39.    The State of Washington has four Medicaid waivers programs that serve children and/or adults that provide nursing services.

> (1) Children with intellectual or developmental disabilities, including autism, ages 8 to 20 years, can receive nurse delegation services in the Children's Intensive In-Home Behavioral Support waiver program.
> (2) Children and adults with intellectual or developmental disabilities, including autism, can receive nurse delegation services in the Individual and Family Services waiver program.
> (3) Children and adults with intellectual or developmental disabilities, including autism, can receive skilled nursing services in the Core Waiver program.
> (4) Children and adults with intellectual or developmental disabilities, including autism, can receive skilled nursing services in the Basic Plus Waiver program.[5]

    **v.    Unavailability of Private Duty Nursing in Washington State**

    40.    Defendant maintains an inadequate number of private duty nurses in their Medicaid program to make private duty nursing available to all EPSDT eligible children and all other persons who have been approved for private duty nursing either under the Washington State Medicaid Plan or Washington State Medicaid Waiver program.

---

[4] https://www.dshs.wa.gov/altsa/private-duty-nursing
[5] https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver list/Waiver-Descript-Factsheet/WA

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

41.     Defendant is aware and has been aware for years that their network of private duty nurses is inadequate to provide needed assistance to Medicaid-eligible persons requiring private duty nursing services to live outside of an institution.

42.     Many children wait months to be discharged from hospitals, are re-hospitalized or placed in institutions, or go without adequate nursing care because of the Defendant's failure to recruit an adequate number of nurses to its program, and that Defendant is aware of this fact.

c.     **The Defendant's Administration of Personal Care (PC) Services in the Community First Choice (CFC) Program**

43.     The Community First Choice (CFC) is a Medicaid entitlement state plan option, established by the Affordable Care Act under 1915(k) of the Social Security Act.  Washington State chose to offer CFC as it provides clients with more service options to support clients to remain in community settings. [6]

44.     CFC is for people living outside of a medical institution . . . and who meet nursing facility level of care or the criteria to reside in an Intermediate Care Facility for the Intellectually Disabled. [7]

45.     One of the services in the CFC program is personal care services.  Personal care services mean hands-on assistance, supervision, and/or cueing activities of daily living (ADL), instrumental activities of daily living (IADL), and health-related tasks due to functional limitations.  ADLs include bathing, bed mobility, body care, dressing, eating, locomotion, medication management, toilet use, transfers, and personal hygiene.  IADL

---

[6] https://www.dshs.wa.gov/altsa/stakeholders/community-first-choice-cfc-option
[7] https://www.hca.wa.gov/free-or-low-cost-health-care/i-help-others-apply-and-access-apple-health/community-first-choice

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

assistance is incidental to the provision of ADL assistance and includes meal preparation, ordinary housework, essential shopping . . . and travel to medical services.  Health-related tasks are tasks related to the needs of an individual which can be delegated or assigned by the licensed health care professionals under state law to be performed by an attendant.[8]

46.     Washington State does not permit parents to be paid by personal care services providers to their children under the age of 18 years in the CFC program.

47.     The Washington State Legislature directed the Department of Social and Health Services' (DSHS) Developmental Disabilities Administration (DDA) to study the feasibility and cost of paying parents of children under 18 years old when the child is medically complex or has complex support needs related to behaviors.  The report, "Addressing Home Care Workforce Shortages: Exploring Paying Parents of Minors to Provide Personal Care", dated December 31, 2023, stated that Washington State is facing a shortage of paid caregivers and by paying parents of minors to provide personal care, may mitigate the shortage for children who have extraordinary, complex care needs.[9]

48.     The report stated: Of the 4,700 children currently eligible to receive personal care services [in the CFC program], 65% (3,100) had providers paid by DDA in the past year.  Those who received paid services utilized 74% of their authorized hours.  If children have the option to have their parents paid to complete their personal care tasks, DDA presumes all

---

[8] https://www.medicaid.gov/State-resource-center/Medicaid-State-Plan-Amendments/Downloads/WA/WA-15-0002.pdf   (See Attachment 3.1 – K at page 2)
[9] https://www.dshs.wa.gov/sites/default/files/DDA/dda/documents/E2SHB%201694%20Sec%2011%20Feasibility%20Study.pdf (at page 3)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

authorized hours would be claims and those who did not have a paid provider would now access one.[10]

49.     Accordingly, 1,600 children receive no personal care services and when added to the 3,100 children receiving 74% of their services, this results in the group as a whole only receiving approximately 50% of the approved hours.

50.     The report concluded with DDA asking that the Legislature appropriate funding to allow DDA to pay parents of minors.  DDA suggests adding personal care services with a provider type of Parents of Minor Children into the already existing Medicaid waiver programs.  *Id.* at page 22.

51.     A second report by DDA to the legislature, dated December 1, 2024, titled "Medicaid 1915(c) Waiver Restructure," proposed a number of recommendations and one of the recommendations was to "[a]dd personal care for minors with extraordinary care needs, whose parents wish to provide paid personal care, as a service in the proposed new Community Supports waiver."[11]

52.     There are approximately 1,000 children receiving personal care services that are not currently enrolled on a waiver.[12]

53.     **Exception to Rule:** A person who is not able to receive all the approved PDN hours, can request an "Exception to Rule" pursuant to WAC 182-501-0160, which permits

---

[10] *Id.,* at page 13.
[11] https://www.dshs.wa.gov/sites/default/files/DDA/dda/documents/24-1119%20DDA%20Waiver%20Restructure%20Report%20corrected.pdf  (at page 1).
[12] https://www.dshs.wa.gov/sites/default/files/DDA/dda/documents/E2SHB%201694%20Sec%2011%20Feasibility%20Study.pdf  (at page 14).

the person to use Personal Care hours along with PDN hours. Pursuant to WAC 388-106-1030, PDN hours are deducted from personal care hours.

      **d.**     **Plaintiff C.F.**

54.     Plaintiff C.F. is 6 years old with significant medical complexities, those that include hypoxic ischemic encephalopathy (HEI) with sequelae of encephalopathy, cerebral palsy (CP), quadriplegia, seizure disorder, chronic constipation, gastronomy tube dependent, tracheostomy dependent, ventilator dependent, dysautonomia, and autonomic dysregulation.

55.     C.F. requires 24/7 care as he is ventilator, tracheostomy and gastronomy tube dependent. C.F. is fed through the g-tube 5 times a day and each feed takes over 1 hour to complete. C.F. is non-verbal, wheelchair-depending and needs 24/7 care and full assistance with all activities of daily living.

56.     The Defendant has approved C.F. for 16 hours per day (112 hours per week) of private duty nursing services, based on medical necessity.

57.     C.F. is only able to obtain approximately 37 hours per week of PDN services for the past 1 ½ years.

58.     There are qualified private duty nursing providers in C.F.'s geographic area.

59.     C.F. has been unable to locate any PDN providers to fulfill all the approved hours.

60.     C.F. has been under the medical care of Dr. Michael Tomkins since October 2022. Dr. Tomkins, who is board certified in pediatrics, recommends 16 hours per day of private duty nursing to safely maintain C.F. at home.

61.     It is medically necessary that C.F. receives PDN services of 16 hours per day, which has been approved by the Defendant.

62.     The parents of C.F. are his only care givers. The parents are not nurses. In March 2020, the parents of C.F. received training from the Mary Bridge Respiratory

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

Therapist team in the PICU, and they later received a training refresher course from Seattle Children's Hospital in 2022.

63.    C.F.'s home is basically set up to be a mini-Intensive Care Unit as would exist in a hospital, with the exception that C.F. does not have registered nurses (RNs) or licensed practical nurses (LPNs) providing any of his care at home.  Without adequate PDN services, the parents of C.F. do not know how long they can maintain C.F. at home and ensure that he has the care he needs.

64.    Without C.F. receiving PDN services, he faces a strong possibility of a life-threatening episode.

65.    If C.F. cannot obtain the PDN services at the level approved by the Defendant, then there is a serious risk that C.F. will be forced to be institutionalized in a hospital or skilled nursing facility.

66.    C.F. is requesting injunctive relief to require the Defendant to arrange for the delivery of private duty nursing services in order that he may remain in the community and not be institutionalized or hospitalized.

67.    C.F. is a qualified individual with a disability under the ADA and the Rehabilitation Act.

68.    The Defendant has regarded Plaintiff C.F. as having a disability within the meaning of the ADA and the Rehabilitation Act.

69.    C.F. is a recipient of Medical Assistance, commonly known as Medicaid.

**e.    Plaintiff W.M.**

70.    Plaintiff W.M. is 3 years old and requires a tracheostomy in order to maintain a stable airway and breathe due to multilevel airway obstruction.  He needs frequent suctioning up to 20 times per day.  W.M. lived in an institution (hospital and skilled care facility) after

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

1
2
3

birth and for his first 2 ½ years of life as there were no PDN services available to him to bring him home.  W.M. could have been discharged from the hospital when he was approximately 3 months old, if there were sufficient PDN services available for him.

4
5
6
7

71.    W.M. was approved 372 hours per month of PDN, but he was not able to locate PDN providers to fulfill all the approved hours.  W.M. has received no PDN services since January 2025.  The Defendant admits that these PDN services are being provided as an alternative to institutionalization in a hospital or nursing facility.

8
9
10
11
12
13
14
15

72.    As the result of W.M. not being able to receive all the approved PDN hours, W.M. requested an "Exception to Rule" pursuant to WAC 182-501-0160, which permits W.M. to use Personal Care hours along with PDN hours.  Pursuant to WAC 388-106-1030, PDN hours are deducted from personal care hours.  In June 2025, W.M. was approved to exchange 360 hours of PDN for personal care (PC) services in the Community First Choice (CFC) program in order to receive some assistance at home.  W.M. currently receives approximately 180 hours per month of certified nursing assistant (CNA) services and has not been able to locate CNA or PC providers to fulfill all the approved hours.  W.M. only utilizes CNA services because he is not able to obtain PDN services.

16
17

73.    W.M. is in the CFC program.  The Defendant admits the CFC program is for persons living outside of a medical institution and who meet a nursing facility level of care.

18

74.    W.M. is also in the Medicaid Waiver program, Basic Plus Waiver.

19
20

75.    W.M. is under the medical care of Dr. Amanda Striegl.  Dr. Striegl stated that W.M. requires 16 hours per day of PDN services.

21
22

76.    It is medically necessary that W.M. receive PDN services.  CNA and PC services are not medical substitutes for PDN services.

23

77.    There are qualified private duty nursing providers in W.M.'s geographic area.

24
25

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

78.    The mother of W.M. and her boyfriend who lives with W.M. perform tracheostomy changes and provide all of his daily trach care.  They suction him up to 20 times a day.  They perform g-tube changes, g-tube feedings using a pump, and medication administration through his g-tube and daily g-tube care.  They do respiratory treatments using APX vest and using AIRVO.  They do nebulizer treatments via the tracheostomy.

79.    The mother of W.M. is reaching the point of exhaustion in trying to provide 24/7 care for W.M.  She is only getting 3-4 hours of sleep due to W.M.'s breathing treatments and his feedings during the night.

80.    W.M. has been hospitalized 5 times since he has been living at home without PDN.

81.    Without W.M. receiving PDN, he faces a strong possibility of a life-threatening episode.

82.    Without W.M. receiving PDN, then there is a serious risk that W.M. will be forced to be institutionalized in a hospital or skilled nursing facility.

83.    If W.M. cannot obtain the PDN services at the level approved by the Defendant, then there is a serious risk that W.M. will be forced to be institutionalized in a hospital or skilled nursing facility.

84.    W.M. is requesting injunctive relief to require the Defendant to arrange for the delivery of private duty nursing services and personal care services in order that he may remain in the community and not be institutionalized or hospitalized.

85.    W.M. is a qualified individual with a disability under the ADA and the Rehabilitation Act.

86.    The Defendant has regarded Plaintiff W.M. as having a disability within the meaning of the ADA and the Rehabilitation Act.

87.    W.M. is a recipient of Medical Assistance, commonly known as Medicaid.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

f.    **Plaintiff O.S.**

88.    Plaintiff O.S. is 9 years old, with Cri du Chat syndrome, feeding difficulties, GERD, severe gut dysmotility, GJT fees, constipation, diarrhea, SIBO, global delays, hip dysplasia, progressive scoliosis, and cerebellar hypoplasia. O.S. receives nutrition and medication through a G-tube. His feeding pump is currently running approximately 17 hours a day in the J port, and the G port is primarily used for his medications. O.S. is non-speaking, uses a wheelchair, needs 24/7 care and full assistance with all activities of daily living and is a substantial risk for aspiration.

89.    O.S. is approved for 56 hours per week of private duty nursing (PDN) services. O.S. is also approved for 232 hours per month (53.5 hours per week) of personal care (PC) services as a substitute for PDN services. O.S. has only been able to use approximately 25 hours of PDN services per week since March 2022, as O.S. has been unable to locate PDN providers to fulfill all the approved PDN hours. O.S. has only been able to use approximately 24 hours of PC services per week.

90.    The Defendant admits that these PDN services are being provided as an alternative to institutionalization in a hospital or nursing facility.

91.    The Defendant admits the CFC program is for persons living outside of a medical institution and who meet a nursing facility level of care.

92.    O.S. is also in the Medicaid Waiver programs, Basic Plus Waiver and the Individual and Family Services (IFS) Waiver, which also provide skilled nursing services, in addition to other services.

93.    There are qualified private duty nursing providers in O.S.'s geographic area.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 20

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

94.     O.S.'s care has been managed by Dr. Michael J. Tomkins since O.S. was 3 months old, in January 2017. Dr. Tomkins, who is board certified in pediatrics, recommends 56 hours per week of private duty nursing to safely maintain O.S. at home.

95.     It is medically necessary that O.S. receives PDN services of 56 hours per week which has been approved by the Defendant.

96.     The parents of O.S. are having a difficult time continuing to care for O.S. without receiving all of the approved PDN services. They have experienced burnout, depression and loss of sleep. The mother of O.S. has had several injuries from overuse and caregiving of O.S. She has been treated for her back, and right elbow (this required her to have a PRP shot and take 6 weeks off of lifting). She has most recently have been battling a shoulder injury (partial bursa tear, tendons starting to calcify). During the time of the elbow injury, the PDN agency got approval from the State for additional hours, but the agency could not staff most of them. The father of O.S. has had back, hip and shoulder pain from the caregiving of O.S.

97.     If O.S. remains at home and receives PDN services at a level which is substantially less than the approved level by the Defendant, then he faces a strong possibility of a life-threatening episode.

98.     If O.S. cannot obtain the PDN services at the level approved by the Defendant, then there is a serious risk that O.S. will be forced to be institutionalized in a hospital or skilled nursing facility.

99.     O.S. is requesting injunctive relief to require the Defendant to arrange for the delivery of private duty nursing (PDN) services in order that he may remain in the community and not be institutionalized or hospitalized.

100.    O.S. is a qualified individual with a disability under the ADA and the Rehabilitation Act.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 21**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

101.    The Defendant has regarded Plaintiff O.S. as having a disability within the meaning of the ADA and the Rehabilitation Act.

102.    O.S is a recipient of Medical Assistance, commonly known as Medicaid.

**g.      Plaintiff J.P.**

103.    Plaintiff J.P. is 16 years old with cerebral palsy, developmental delay, intermittent explosive disorder, oppositional defiant disorder, fecal smearing and wears diapers. J.P. has severe behavioral and body regulatory issues, suffers from inconsistent sleep, inconsistent muscle control, inconsistent strength, complete disregard for his own safety, self-injurious behavior, explosive episodes of anger and physical aggression constant meltdowns, anxiety and impulse control.

104.    J.P. has suffered from these disabilities since his early childhood.  His symptoms have been exacerbated from hormones during his puberty. J.P. requires assistance in activities of daily living and dealing with his behaviors of biting and kicking family members.

105.    J.P. is approved for 73 hours per month of PC services in the CFC program and has obtained zero (-0-) hours of PC since 2020.  J.P. has been unable to locate any PC providers to fulfill all the approved hours.

106.    The Defendant admits the CFC program is for persons living outside of a medical institution and who meet a nursing facility level of care.

107.     J.P. is also in the Medicaid Waiver program, Basic Plus Waiver, which also provides skilled nursing services, in addition to other services.

108.    The mother of J.P. has had Developmental Disabilities Administration (DDA) in Washington State reach out to agencies on behalf of J.P. seeking personal care services, and DDA has been unable to locate a PC provider for J.P.  J.P.'s mother has been a member

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

of Carina[13] for 6 years, which is a care matching website that links those in need of in-home care with caregivers, and she has been unable to locate any PC providers to serve J.P. She has also tried Cares[14] which connects families with local caregivers, without success. She has put requests for caregivers on the community pages in her area without success. She has also called personal care provider agencies without success in getting PC services for J.P.

109.    When told of the inability to locate PC providers for J.P, the Developmental Disabilities Administration of Washington State suggested either that the parents of J.P. should get divorced so that J.P.'s stepfather could provide the PC hours or that J.P. be institutionalized.

110.    Without the State providing personal care hours, J.P.'s parents have both been forced to quit their jobs and care for J.P. all hours of the day. This represents an enormous burden on them.

111.    J.P. is requesting injunctive relief to require the Defendant to arrange for the delivery of personal care services in order that he may remain in the community and not be institutionalized or hospitalized.

112.    J.P. is at serious risk of institutionalization by not receiving the approved level of PC services.

113.    If J.P. cannot obtain the PC services at the level approved by the Defendant, then there is a serious risk that J.P. will be forced to be institutionalized in a medical institution or nursing facility.

114.    J.P. is a qualified individual with a disability under the ADA and the Rehabilitation Act.

---

[13] www.carina.org
[14] www.cares.com

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 23**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

115.    The Defendant has regarded Plaintiff J.P. as having a disability within the meaning of the ADA and the Rehabilitation Act.

116.    J.P. is a recipient of Medical Assistance, commonly known as Medicaid.

**h.  Plaintiff W.J.**

117.    Plaintiff W.J. is 10 years of age with post-traumatic stress disorder (PTSD), ADHD and Autism.  W.J. requires assistance in activities of daily life and dealing with his behaviors of hitting family members.

118.    W.J. is approved of 28 hours per month of PC services in the CFC program and has obtained zero (-0-) hours of CP since he was approved in July 2025.  W.J. has been unable to locate any PC providers to fulfill all the approved hours.

119.    The Defendant admits the CFC program is for persons living outside of a medical institution and who meet a nursing facility level of care.

120.    W.J. is also in the Medicaid Waiver program, the Individual and Family Services (IFS) Waiver, which also provide skilled nursing services, in addition to other services.

121.    W.J. is requesting injunctive relief to require the Defendant to arrange for the delivery of personal care services in order that he may remain in the community and not be institutionalized or hospitalized.

122.    W.J. is at a serious risk of institutionalization by not receiving the approved level of PC services.

123.    If W.J. cannot obtain the PC services at the level approved by the Defendant, then there is a serious risk that W.J. will be forced to be institutionalized in a medical institution or nursing facility.

124.    W.J is a qualified individual with a disability under the ADA and the Rehabilitation Act.

125.    The Defendant has regarded Plaintiff W.J. as having a disability within the meaning of the ADA and the Rehabilitation Act.

126.    W.J. is a recipient of Medical Assistance, commonly known as Medicaid.

## V.    CLASS ALLEGATIONS

127.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  This action is brought as a statewide class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) on behalf of two classes:

**Class No. 1:**

All Medicaid-enrolled children under the age of 21 in the State of Washington who now or in the future have been approved for Private Duty Nursing (PDN) services by the Defendant, but who are not receiving Private Duty Nursing services at the level approved by the Defendant.

**Class No. 2:**

All Medicaid-enrolled children under the age of 21 in the State of Washington who now or in the future have been approved for Personal Care (PC) services by the Defendant, but who are not receiving Personal Care services at the level approved by the Defendant.

128.    The Class is so numerous that joinder of all persons is impracticable.  As to Class No. 1, upon information and belief, there are approximately 100 children eligible to receive private duty nursing services who are not receiving their private duty nursing services at the approved level.  As to Class No. 2, there are approximately 4,700 children currently eligible to receive Medicaid personal care services who are not receiving their Medicaid personal care services at the level approved.  The Class is fluid in that new members are regularly created.  The number and identity of future Class members are naturally unknown, making joinder inherently impossible.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

1

2

129.    The Plaintiffs and Class have limited financial resources, and as a Medicaid recipient, are unlikely to institute individual actions.

3

4

5

6

7

8

130.    The claims of the Class members raise common questions of law and fact.  The factual questions commons to the entire Class include what policies and practices were instituted or permitted by Defendant with respect to the coverage of private duty nursing services and personal care services and his resulting systemic failures to arrange for Medicaid-covered, medically necessary private duty nursing services and for personal care services.  The legal questions common to the Plaintiffs and Class members include:

9

10

11

12

(a)  Whether the Defendant has failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment  [private duty nursing services and personal care services]" to the Plaintiffs and Class as mandated by the federal Early and Periodic Screening, Diagnostic and Treatment (EPSDT) provisions of the Medicaid Act pursuant to 42 U.S.C. §  1396a(a)(43)(C) and 42 U.S.C. Sec. 1396d(r)(5);

13

(b)  Whether the Defendant has failed to furnish medical assistance with reasonable promptness to the Plaintiffs and Class, pursuant to 42 U.S.C. § 1396a(a)(8);

14

15

16

(c) Whether the Defendant violated the ADA and/or Rehabilitation Act when the Defendant failed to arrange for Medicaid-covered, medically necessary Private Duty Nursing services and Personal Care services;

17

18

(d)  Whether the Defendant violated the ADA and/or the Rehabilitation Act by failing to assure that Private Duty Nursing services and Personal Care services are administered to the Plaintiffs and Class in the most integrated setting appropriate to their needs; and

19

20

(e)  Whether the Defendant violated the ADA and/or the Rehabilitation Act when the Defendant failed to make reasonable modifications to the existing Medicaid benefit which would result in the availability of Private Duty Nursing services and Personal Care services.

21

22

23

131.    The Plaintiffs' claims are typical of the Class members' claims.  Plaintiffs and Class No. 1 are unable to arrange for private duty nursing services at the level that the Defendant found to be medically necessary for them.  Plaintiffs and Class No. 2 are unable

24

25

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 26**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

to arrange for personal care services at the level that the Defendant found to be medically necessary for them.

132.    The Plaintiffs are an adequate representative of the Class because they suffer from deprivations identical to those of the Class members and have been denied the same federal rights that they seek to enforce on behalf of the other Class members.

133.    The Plaintiffs will fairly and adequately represent the interests of the other Class members, many of whom are unable to pursue claims on their own behalf as the result of their disabilities.

134.    The Plaintiffs' interest in obtaining injunctive relief for the violations of their rights and privileges are consistent with and not antagonistic to those of any person within the Class.

135.    The Plaintiffs' counsel is qualified, experienced and able to conduct the proposed litigation.

136.    Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the party opposing the Class or could be dispositive of the interests of the other members or substantially impair or impede the ability to protect their interests.

137.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

> (a) A multiplicity of suits with consequent burden on the courts and defendants    should be avoided.
> (b) It would be virtually impossible for all class members to intervene as parties- plaintiffs in this action.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 27**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

# VI.     LEGAL ALLEGATIONS

## COUNT I

a.     **Violation Of The Federal Medicaid Act's Early And Periodic Screening, Diagnostic And Treatment (EPSDT)**

## MANDATE

138.     The Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

139.     In violation of the EPSDT provisions of the Medicaid Act, 42 U.S.C. Sec. 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C), the Defendant, while acting under the color of law, has failed to provide the Plaintiffs and Class with private duty nursing services and personal care services necessary to treat or ameliorate their conditions.

140.     In violation of the EPSDT provisions of the Medicaid Act, the Defendant, while acting under the color of law, has failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [private duty nursing services and personal care services]" to the Plaintiffs and Class pursuant to 42 U.S.C. Sec. 1396a(a)(43)(C).

141.     The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## COUNT II

b.     **Violation Of The Federal Medicaid Act's**

## REASONABLE PROMPTNESS REQUIREMENT

142.     The Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

143.     The named Plaintiffs and the Class they seek to represent are all Medicaid-enrolled children and adults with disabilities residing in Washington State.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 28**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

144.    The Defendant is engaged in the repeated, ongoing failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment, despite the Defendant's acknowledgment that private duty nursing services and personal care services are medically necessary for all named Plaintiffs and Class members.

145.    In violation of 42 U.S.C. Sec. 1396a(a)(8) of the Federal Medicaid Act, the Defendant, while acting under the color of law, failed to provide services to the Plaintiffs and Class with ". . . reasonable promptness . . .".

146.    The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## COUNT III

### c.    Violation Of American With Disabilities Act (ADA)

147.    The Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

148.    Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. § 12, 131-32.  The ADA's implementing regulations further state that a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d).

149.    The Plaintiffs and Class are qualified individuals with disabilities within the meaning of Title II of the ADA.

150.    The Washington State Health Care Authority of which Defendant Moran is Director is a "public entity" within the meaning of Title II of the ADA.

151.    The Defendant's policies and practices have the effects of: (1) impermissibly segregating some Plaintiffs and Class members in institutions; and (2) placing other Plaintiffs and Class members at a serious risk of institutionalization.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 29**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

152.    The actions by HCA constitute unlawful discrimination under the ADA and violate the integration mandate of the implementing regulations.

153.    The Plaintiffs and Class who have been approved for private duty nursing services require private duty nursing services to avoid institutionalization.  The Defendant's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [private duty nursing services], violates the ADA and its implementing regulations.

154.    The Plaintiffs and Class who have been approved for personal care services require personal care services to avoid institutionalization.  The Defendant's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [personal care services], violates the ADA and its implementing regulations.

155.    The Plaintiffs and Class have no adequate remedy at law.

156.    The Plaintiffs are indigent and unable to post bond.

157.    The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## COUNT IV

### d.    Violation Of Rehabilitation Act And 42 U.S.C. Section 1983

158.    The Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

159.    The Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.  The implementing regulation for the statute requires that public and federally funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability."  28 C.F.R. § 41.51(d).  Policies and practices that have

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 30

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act (RA).

160.    The Washington State Health Care Authority is a recipient of federal funds under the Rehabilitation Act.

161.    The Plaintiffs and Class are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

162.    The actions by HCA constitute unlawful discrimination under 29 U.S.C. § 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. § 41.51(d).

163.    Those Plaintiffs and Class who have been approved for private duty nursing services require private duty nursing services to avoid institutionalization. The Defendant's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [private duty nursing services], violates Section 504 of the Rehabilitation Act of 1973 and its implementing regulations.

164.    Those Plaintiffs and Class who have been approved for personal care services require private personal care services to avoid institutionalization. The Defendant's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [personal care services] violates § 504 of the Rehabilitation Act of 1973 and its implementing regulations.

165.    The Plaintiffs and putative class have no adequate remedy at law.

166.    The Plaintiffs are indigent and unable to post bond.

167.    The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. § 1983.

### VII.    REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 31**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

1. Certify this case to proceed as a class action under Fed. R. Civ. P. 23(b)(2);

2. Issue a Declaratory Judgment in favor of the Plaintiffs and the Class, requiring Defendant to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act:

   a. Declaring Defendant's policies, practices, acts, and omissions in providing private duty nursing services and personal care services to Medicaid-eligible children violate the EPSDT and reasonable promptness provisions of the Medicaid Act;

   b. Declaring Defendant's policies, practices, acts, and omissions in providing private duty nursing services and personal care services to Medicaid-eligible children in the most integrated setting appropriate to their needs violate the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; and

   c. Requiring Defendant adhere with the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

3. Issue Preliminary and Permanent Injunctive relief enjoining the Defendant from subjecting the Plaintiffs and the Class to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act and the Rehabilitation Act;

4. Preliminary and Permanent Injunctive relief requiring Defendant:

   a. Establish and implement policies, procedures, and practices that are sufficient to ensure that Plaintiffs and all Class members promptly and continue to receive medically necessary private duty nursing services and personal care services;

   b. Establish and implement policies, procedures, and practices to ensure that an adequate number, geographic distribution, and variety of qualified providers are available to offer private duty nursing services and personal care services.

   c. Establish and implement policies, procedures, and practices to ensure a range of alternatives to private duty nursing services and personal care services that would fulfill Plaintiff and Class members' medical needs; and

   d. Promptly, arrange, directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 32**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

(private duty nursing services and personal care services) to all Plaintiffs
and Class members;

5.    Order the appointment of a master pursuant to FRCP to monitor Defendant's
compliance with the Court's injunction and federal law with respect to the availability of
medical assistance, specifically the availability of private duty nursing services and personal
care services to Medicaid recipients in Defendant's Medicaid programs.

6.    Award Plaintiffs and the Class the costs of this action, including reasonable
attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C.
§ 1988; and

7.    Award such other relief as the Court deems just and appropriate.


DATED this 2nd day of February 2026.

ALBERT LAW PLLC


By: _____
Gregory Albert, WSBA#: 42673
3131 Western Ave., Suite 410
Seattle, WA 98121
Telephone: (206)-576-8044
Email: greg@albertlawpllc.com
*Attorney for Plaintiffs*

Robert H. Farley, Jr., Ltd.  Robert
H. Farley Jr.
1155 S. Washington Street
Naperville, IL 60540  Telephone:
(630) 369-0103
E-mail: farleylaw@aol.com
*Attorney for Plaintiffs*

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 33**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044