UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C.F. et al,

Plaintiffs,

v.

Ryan Moran,

Defendant.

Case No. 3:26-cv-05095-TMC

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiffs are five Washington children with complex health needs who qualify for services from the Washington State Health Care Authority ("HCA"). They allege that Defendant Ryan Moran, the Director of HCA, has failed to provide their approved Private Duty Nursing ("PDN") and Personal Care ("PC") services in violation of the Medicaid Act, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Plaintiffs request a preliminary injunction requiring Defendant to provide their approved services and to pay parents who have been providing care to their children in the State's stead. Dkt. 18.

For the following reasons, the Court concludes that two of five plaintiffs—identified by the initials W.M. and O.S.—have met the standard for a mandatory preliminary injunction. The Court thus GRANTS the motion for preliminary injunction as to these Plaintiffs and DENIES the

motion as to Plaintiffs C.F., W.J., and J.P. However, requiring the State to pay parents for providing care would be a fundamental alteration to the State's current care program. The Court thus requires only that Defendant take all actions necessary for W.M. and O.S. to receive their approved PDN hours, and counsel for both parties must meet to create a plan for the implementation of this relief, including regular updates to the Court as the litigation proceeds.

## II. BACKGROUND

### A. Facts

Plaintiffs are children between the ages of three and sixteen with unique and complex health needs. Dkt. 20 ¶¶ 2–5; Dkt. 21 ¶¶ 2–3; Dkt. 22 ¶¶ 2–4; Dkt. 23 ¶¶ 2–3; Dkt. 27 ¶¶ 2–4. Plaintiffs C.F., W.M., and O.S. have been approved for PDN services but are not receiving those services at the hours approved. Dkt. 1 ¶ 4; Dkt. 20 ¶ 6; Dkt. 22 ¶ 5; Dkt. 27 ¶¶ 5–6. Plaintiffs J.P. and W.J. have been approved for PC services but are not receiving those services at the hours approved. Dkt. 1 ¶ 5; Dkt. 21 ¶ 4; Dkt. 23 ¶ 6. Plaintiffs assert that it is medically necessary for them to receive these services and that they face potential institutionalization if they do not receive them. Dkt. 20 ¶¶ 9, 11; Dkt. 21 ¶¶ 5–6; Dkt. 22 ¶¶ 6–10; Dkt. 23 ¶¶ 9–11; Dkt. 24 ¶ 5; Dkt. 25 ¶¶ 7–9; Dkt. 26 ¶¶ 6–8; Dkt. 27 ¶¶ 10–11.

Because they have been unable to receive their approved PDN hours, W.M. and O.S. applied for permission to receive PC services as a substitute. Dkt. 20 ¶ 8; Dkt. 27 ¶ 6. These Plaintiffs have not been receiving PC services at the level approved through that exception. Dkt. 20 ¶ 8; Dkt. 27 ¶ 6. The parents of all five Plaintiffs have been providing care to their children in lieu of the professional medical care that their children are approved to receive. *See* Dkt. 20 ¶¶ 12–13; Dkt. 21 ¶¶ 3–4; Dkt. 22 ¶ 8; Dkt. 23 ¶ 8; Dkt. 27 ¶ 9.

**B. Procedural history**

On February 2, 2026, Plaintiffs filed a putative class complaint alleging that Defendant violated several provisions of the Medicaid Act, Title II of the ADA, and Section 504 of the Rehabilitation Act by failing to provide their approved services. Dkt. 1. One week later, Plaintiffs moved for class certification and for a preliminary injunction. Dkts. 8, 18. On June 18, the Court denied Plaintiffs' motion for class certification. Dkt. 72. The preliminary injunction motion is now fully briefed and ripe for the Court's review, and the Court considers the request for a preliminary injunction as to each individual Plaintiff. Dkts. 34, 63.

## III. LEGAL STANDARD

A preliminary injunction "is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation marks omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008)).

"To obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc) (citing *Winter*, 555 U.S. at 20). "When, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The movant must make a showing on each element of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Here, Plaintiffs seek a "mandatory injunction," which "'order[s] a responsible party to take action' going 'well beyond simply maintaining the status quo.'" *Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024) (quoting

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). A party seeking a mandatory injunction must demonstrate "that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Id.* (alterations in original) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)).

"[T]he mere allegations of a complaint" do not suffice to obtain a preliminary injunction, *Takiguchi v. MRI Int'l, Inc.*, 611 F. App'x 919, 921 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20), but the evidence submitted in support "need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*, No. 2:16-cv-05719-SVW-JC, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

## IV. DISCUSSION

Plaintiffs seek the following relief:

> a Preliminary Injunction ordering the Defendant Ryan Moran to take immediate and affirmative steps to arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment of Private Duty Nursing (PDN) services and Personal Care (PC) services to the Plaintiffs . . . at the level approved by the Defendant, as required by the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act, pending final judgment in this action or until further order of Court.

Dkt. 18 at 15. Plaintiffs also ask the Court to order Defendant to pay parents who are currently providing PC services as a substitute for the professional PDN and PC services for which their children have been approved. *Id.* at 15–16. Plaintiffs request that Defendant be required to provide them with progress updates every 30 days. *Id.* at 16.

As explained further below, Plaintiffs W.M. and O.S. have met the standard for a mandatory preliminary injunction. But the Court will not require Defendant to pay those Plaintiffs' parents for providing PC services, as this would fundamentally alter the State's PDN and PC programs. Instead, as soon as practicable, counsel for Plaintiffs and Defendants must

confer to develop a plan for Defendants to provide W.M. and O.S. with their approved number of PDN hours. Counsel must submit an initial joint status report summarizing their efforts within 30 days of this Order and provide a schedule for regular updates to the Court thereafter.

**A. Likelihood of success on the merits**

The Court first considers whether Plaintiffs are likely to succeed on the merits of their claims against Defendant. *Winter*, 555 U.S. at 20. Under the Supreme Court's decision in *Medina v. Planned Parenthood South Atlantic*, Plaintiffs lack a private right of action to pursue their Medicaid Act claims under 42 U.S.C. § 1983 and thus cannot succeed on the merits of these claims. But two Plaintiffs, W.M. and O.S., have shown a likelihood of success on the merits of their ADA claim.

*1. The relevant provisions of the Medicaid Act do not confer private rights of action enforceable under 42 U.S.C. § 1983.*

Plaintiffs allege that Defendant violated the Medicaid Act's "early and periodic screening, diagnostic, and treatment" ("EPSDT") provisions, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), and 1396d(a)(4)(B), as well as the "reasonable promptness" provision, 42 U.S.C. § 1396a(a)(8). Dkt. 1 ¶¶ 138–46. Plaintiffs seek to enforce these alleged violations under 42 U.S.C. § 1983. *Id.* Defendant argues that these provisions of the Medicaid Act do not confer private rights of action enforceable in a Section 1983 suit. Dkt. 34 at 9–13. The Court agrees.

Section 1983 "allows private parties to sue state actors who violate their 'rights' under 'the Constitution and laws' of the United States." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365 (2025). But a violation of a federal statute is only enforceable under Section 1983 if that statute "*unambiguously* confer[s] individual federal rights." *Health & Hosp. Corp. of*

*Marion Cnty. v. Talevski*, 599 U.S. 166, 180 (2023). This situation is "atypical," particularly for statutes that were enacted under Congress's spending power. *Id.* at 183.

In *Medina*, the Supreme Court clarified that a plaintiff seeking private enforcement of a statute under Section 1983 "must show that the law in question 'clear[ly] and unambiguous[ly]' uses 'rights-creating terms'" and "display[s] 'an unmistakable focus' on individuals like the plaintiff." 606 U.S. at 368 (first and second alterations in original) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 290 (2002)). The *Medina* Court explained that this standard is "stringent and demanding," and "even for the rare statute that satisfies it . . . a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy." *Id.* (internal quotation marks omitted) (quoting *Talevski*, 599 U.S. at 180, 186). In defining the contours of this test, the Supreme Court abrogated three of its prior decisions, each of which recognized a less demanding standard for privately enforceable rights: *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990); *Blessing v. Freestone*, 520 U.S. 329 (1997); and *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418 (1987). *Id.* at 376.

*Medina* forecloses the relief that Plaintiffs seek under the Medicaid Act. The Court first considers the reasonable promptness provision, which requires a state plan for medical assistance to "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). In the years following *Medina*, two courts have concluded that this provision does not confer a private right of action enforceable under Section 1983. First, in *Lancaster ex rel Green v. Cartmell*, the Tenth Circuit compared Section 1396a(a)(8) to 42 U.S.C. § 1396a(a)(23)(A), the provision at issue in *Medina*:

> Both are Medicaid Act provisions that are nested within the same subsection, titled "Contents," that lists requirements States must substantially comply with to receive Medicaid funding. Both are requirements directed to the Secretary of Health and

> Human Services for plan approvals. And although § 1396a(a)(8) arguably has more "mandatory terms" and directives (such as that a State "must ... provide" certain obligations) than § 1396a(a)(23)(A), *Medina* teaches that mandatory language alone does not create individually enforceable rights.

162 F.4th 1063, 1068 (10th Cir. 2025) (internal citations omitted), *cert. denied sub nom. Lancaster v. Cartmell*, No. 25-1228, 2026 WL 1855141 (U.S. June 29, 2026). Based on these similarities, the Tenth Circuit concluded that the reasonable promptness provision was not "the atypical, rare exception that confers individual rights." *Id.* And the court in *Ramirez v. Oregon Health & Science University* similarly concluded that Section 1396a(a)(8) is substantially like Section 1396a(a)(23)(A) and thus does not "clearly and unambiguously use rights-creating terms." No. 3:24-CV-01470-SB, 2026 WL 353204, at *19 (D. Or. Feb. 9, 2026) (citing *Medina*, 606 U.S. at 368).

This Court agrees with the *Lancaster* and *Ramirez* courts that *Medina* controls the analysis of Section 1396a(a)(8). The Supreme Court in *Medina* noted that "[a]ll of § 1396a(a)'s requirements are directed to the Secretary of Health and Human Services, who must 'approve any plan' that meets them," placing those provisions in "stark contrast" to "rights-creating provisions" set apart by Congress. 606 U.S. at 379–80. The Court determined that the use of mandatory terms such as "must" or "shall," as well as references to "individuals," did not overcome a provision's failure to include clear and unambiguous rights-creating language. *Id.* at 380. Nothing in Section 1396a(a)(8) is so clear or unambiguous as to overcome *Medina*'s stringent and demanding test. The Court thus concludes that the reasonable promptness provision does not confer a private right to sue under Section 1983.

Next, the Court considers the EPSDT provisions. Section 1396d(a)(4)(B) defines "medical assistance" to include payment for "early and periodic screening, diagnostic, and treatment services . . . for individuals who are eligible under the plan and are under the age of

21." Section 1396a(a)(10)(A) requires a state plan for medical assistance to "provide . . . for making medical assistance available" to certain defined individuals. Section 1396a(a)(43)(C) requires a state plan for medical assistance to "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by [certain] child health screening services." Again, *Medina* controls. Two of these provisions—Sections 1396a(a)(10)(A) and (43)(C)—are located in the same statutory subsection as Sections 1396a(a)(8) and (23)(A). Plaintiffs point to the use of the words "must" and "individuals" as support for their claim that these provisions are privately enforceable. Dkt. 63 at 4. But as discussed above, the mandatory language of Section 1396a(a) and any references to "individuals" in these specific provisions are not sufficient to demonstrate Congress's intent to confer private rights of action. *See Medina*, 606 U.S. at 380. And Plaintiffs do not identify specific rights-creating language in any of the three EPSDT provisions at issue here. *See* Dkt. 63 at 3–6.

Plaintiffs cite several pre-*Medina* circuit court cases, including one from the Ninth Circuit, to support their argument about the EPSDT provisions. *Id.* at 5; *see Watson v. Weeks*, 436 F.3d 1152, 1159–62 (9th Cir. 2006) (concluding that Section 1396a(a)(10) creates a private right of action). But the Ninth Circuit in *Watson v. Weeks* based its analysis on *Blessing v. Freestone* and *Wilder v. Virginia Hospital Association*, both of which the Supreme Court specifically disavowed in *Medina*. *Watson*, 436 F.3d at 1160–62. *Watson* is therefore "clearly irreconcilable" with *Medina* and cannot be considered controlling. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)). Plaintiffs also cite *Hawai'i Disability Rights Center v. Kishimoto*, which concluded, after *Medina*, that the EPSDT provisions create private rights of action. Dkt. 63 at 5–6; No. CV 18-00465 LEK-KJM, 2026 WL 562065, at *7–10 (D. Haw. Feb. 27,

2026). That opinion relied on *Watson* and focused on the use of mandatory and individual language in the provisions at issue. *Kishimoto*, 2026 WL 562065, at *7–11. For the reasons already explained, and in light of *Medina*'s clear instruction that Medicaid provisions confer private rights of action only in atypical cases, the Court does not find this reasoning persuasive.

Because none of the Medicaid Act provisions at issue in this matter create private rights of action enforceable under Section 1983, Plaintiffs cannot succeed on the merits of their Medicaid claims.

*2. Plaintiffs W.M. and O.S. are likely to succeed on the merits of their ADA claim.*

Although Plaintiffs lack a private right of action for their Medicaid Act claims, they may still obtain a preliminary injunction by demonstrating a likelihood of success on the merits of their ADA claim.[1] Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Specifically, "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). A violation of this requirement, known as the "integration mandate," is a form of discrimination based on disability. *A.H.R. v. Wash. State Health Care Auth.*, 469 F. Supp. 3d 1018, 1043 (W.D. Wash. 2016) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592, 600–01 (1999)). Courts must construe the integration mandate "broadly in order to effectively implement the ADA's fundamental purpose of 'provid[ing] a clear and

[1] Plaintiffs also bring a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Dkt. 1 ¶¶ 158–67. "Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act," *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001), and the Ninth Circuit has "generally interpret[ed] the two statutes as providing the same protections." *Haw. Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 361 (9th Cir. 2024). The Court considers these claims together.

comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) (alteration in original) (quoting *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002)).

Plaintiffs allege that Defendant violated the integration mandate through "policies and practices [that] have the effects of: (1) impermissibly segregating some Plaintiffs . . . in institutions; and (2) placing other Plaintiffs . . . at a serious risk of institutionalization." Dkt. 1 ¶¶ 147–57. Defendant does not dispute that HCA is a public entity or that Plaintiffs are qualified individuals with disabilities, but Defendant asserts that Plaintiffs have failed to prove that they face a serious risk of institutionalization. Dkt. 34 at 20–23.

Other courts have concluded that medically complex children showed a likelihood of success on the merits of integration-mandate claims by demonstrating that they had not received the number of PDN hours for which they were approved. *A.H.R.*, 469 F. Supp. 3d at 1043–45; *M.G. ex rel. Garcia v. Scrase*, No. 1:22-CV-00325 MIS/DLM, 2023 WL 3686751, at *11 (D.N.M. May 26, 2023), *aff'd on other grounds sub nom. M.G. ex rel. Garcia v. Armijo*, 117 F.4th 1230 (10th Cir. 2024). These courts determined that injunctive relief was necessary because failure to provide these approved hours created an "immediate risk" that the children would be institutionalized. *M.G.*, 2023 WL 3686751, at *11; *A.H.R.*, 469 F. Supp. 3d at 1044 ("Here, there is substantial evidence that those Plaintiffs still living at home will likely be forced into group homes or institutionalized care unless they are able to secure 16 hours of private duty nursing care within a short period of time."); *see also Ind. Prot. & Advoc. Servs. Comm'n v. Ind. Fam. & Soc. Servs. Admin.*, 149 F.4th 917, 929–30 (7th Cir. 2025) ("The integration mandate can apply whenever a State administers Medicaid in a manner that places disabled individuals at 'serious risk of institutionalization.'" (quoting *Steimel v. Wernert*, 823 F.3d 902, 914 (7th Cir. 2016))).

Here, Plaintiffs W.M. and O.S. have presented substantial evidence that Defendant's failure to provide them with their approved PDN hours places them at an immediate risk of institutionalization. W.M., who is three years old, was approved for 372 PDN hours per month, but he has received no PDN hours since January 2025. Dkt. 19 at 4–5; Dkt. 20 ¶ 6. He was institutionalized for the first 2.5 years of his life and has returned to the hospital at least five times since he began to live at home. Dkt. 20 ¶¶ 5, 11. He presents a declaration from his medical provider, Dr. Amanda Striegl, who states that "[i]t is medically necessary for W.M. to have a caregiver who is fully trained in both routine and emergency care of a patient with tracheostomy tube awake and in his presence at all times," and that "Certified Nursing Assistant (CNA) and Personal Care (PC) services are not a medical substitute for in-home nursing services or private duty nursing services for W.M." Dkt. 24 ¶¶ 5, 10. O.S. was approved for 56 hours per week of PDN services but has received only 25 hours of weekly PDN services since March 2022. Dkt. 19 at 7–8; Dkt. 27 ¶ 5. He presents a declaration from his medical provider, Dr. Michael J. Tomkins, who states that it is medically necessary for O.S. to receive his approved PDN hours and that failure to receive those services at the approved level creates a "serious risk" of institutionalization. Dkt. 25 ¶¶ 7, 9.

Like W.M. and O.S., Plaintiff C.F. has presented substantial evidence of the severity of his condition and the necessity of PDN services. C.F. was approved for 112 weekly PDN hours but has received only about 37 weekly PDN hours since mid-2024. Dkt. 22 ¶ 5. He presents a declaration from Dr. Tomkins that these PDN hours are medically necessary and that he faces a serious risk of institutionalization if he does not receive them. Dkt. 26 ¶¶ 6, 8. But Defendant presents evidence that C.F.'s family has declined multiple potential caregivers and efforts to provide services in his home, and that he has previously lost access to care due to treatment of care providers by his family members that care agencies deemed unacceptable. Dkt. 40 at 8–9,

14, 83–85, 88–92, 109. C.F.'s mother states in a declaration that the family has declined potential nurses due to "competency issue[s]" and that some nurses hired to care for C.F. "did not work." Dkt. 65 ¶¶ 5–6. These facts do not clearly favor C.F.'s position that his lack of PDN hours is the result of Defendant's failure to provide them. C.F. therefore does not meet the standard to obtain a mandatory preliminary injunction. *Marlyn Nutraceuticals*, 571 F.3d at 879.

Plaintiffs W.J. and J.P. have not demonstrated that they face a serious risk of institutionalization absent the services for which they are approved. These plaintiffs are approved for PC services, defined under Washington law as "physical or verbal assistance with activities of daily living (ADL) and instrumental activities of daily living (IADL) due to . . . functional limitations." WAC 388-106-0010. They present declarations from their parents that they have not received their approved PC hours and face a serious risk of institutionalization as a result, but they do not present any evidence from medical providers to corroborate these statements. Dkt. 21 ¶¶ 4–5; Dkt. 23 ¶¶ 6, 10; *see* Dkt. 34 at 22–23. And Plaintiffs do not identify any case in which a party obtained a preliminary injunction on an ADA claim based on a failure to provide approved PC services. While W.J. and J.P. may ultimately succeed on their ADA claim, the evidence before the Court at this stage does not merit a mandatory preliminary injunction for these Plaintiffs.

**B. Irreparable harm**

Having determined that W.M. and O.S. are likely to succeed on the merits of their ADA claim, the Court next considers whether these Plaintiffs are likely to suffer irreparable harm without preliminary injunctive relief. *Winter*, 555 U.S. at 20. Plaintiffs argue that W.M. and O.S. will be irreparably harmed in the absence of a preliminary injunction because they "face serious risks of illness, injury, and harmful medical complications without receiving all the approved PDN hours." Dkt. 18 at 13. The Court agrees.

Courts in this circuit have concluded that risk of institutionalization due to the State's failure to provide necessary medical care constitutes irreparable injury. *See, e.g.*, *A.H.R.*, 469 F. Supp. 3d at 1046–47; *K.W. ex rel. D.W. v. Armstrong*, 298 F.R.D. 479, 493 (D. Idaho 2014); *V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1122 (N.D. Cal. 2009), *order enforced*, No. C 09-04668 CW, 2009 WL 4282079 (N.D. Cal. Nov. 25, 2009); *see also Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1156–57 (9th Cir. 2007). As explained in Section IV.A.2, W.M. and O.S. have demonstrated a serious risk of institutionalization if they do not receive their required PDN hours. Defendant argues that HCA "has taken steps to alleviate occasional shortages" in PDN hours by permitting families to utilize PC services as a substitute. Dkt. 34 at 25. But to the extent that PC services can be an adequate substitute for PDN, these Plaintiffs have not been receiving the hours of PC services deemed necessary, and they continue to face a risk of institutionalization absent the approved level of PDN services. Dkt. 20 ¶¶ 8–9, 11; Dkt. 24 ¶¶ 9–10; Dkt. 25 ¶¶ 7–9; Dkt. 27 ¶ 6. W.M. and O.S. have thus demonstrated that they are likely to face irreparable harm without a preliminary injunction.

**C. Balance of equities and public interest**

The final two factors in the preliminary injunction analysis require the Court to consider whether the balance of equities favors W.M. and O.S., and whether an injunction would be in the public interest. *Winter*, 555 U.S. at 20. As Defendant is a government official, the Court considers these factors together. *Baird*, 81 F.4th at 1040. Plaintiffs argue that the provision of their required medical care benefits the public interest and outweighs any government budgetary concerns. Dkt. 18 at 14–15. Defendant responds that HCA "has taken considerable steps to provide services to the plaintiffs and assist the families in finding additional caregivers," and that "[t]he public interest would be best served by continuing to allow the Legislature to weigh the

policy choices and to allow HCA to continue working with the families to provide services." Dkt. 34 at 25–26.

The Ninth Circuit has "several times held that the balance of hardships favors beneficiaries of public assistance who may be forced to do without needed medical services over a state concerned with conserving scarce resources." *M.R. v. Dreyfus*, 697 F.3d 706, 737 (9th Cir. 2012). Additionally, failing to provide PDN services may place greater strain on public resources "given the higher costs of institutionalized or group home care or the costs that HCA may have to incur should the lack of private duty nursing services result in injury to Plaintiffs." *A.H.R.*, 469 F. Supp. 3d at 1048. The Court thus concludes that the balance of equities and the public interest favor W.M. and O.S., and these Plaintiffs are entitled to preliminary injunctive relief.

**D. Injunctive relief available**

The Court now considers the scope of injunctive relief available to W.M. and O.S. Defendant argues that requiring payment of parents for providing PC services would fundamentally alter the State's current program for PDN and PC services. Dkt. 34 at 23–24. Plaintiffs contend that this relief would simply be "a modification of the existing program." Dkt. 63 at 13.

A state's obligation to follow the integration mandate "is not boundless." *Olmstead*, 527 U.S. at 603 (plurality opinion). Under the ADA's implementing regulations, a public entity must make "reasonable modifications in policies, practices, or procedures" to avoid disability discrimination, but only if such modifications would not "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). This regulation "allow[s] the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large

and diverse population of persons with mental disabilities." *Olmstead*, 527 U.S. at 604 (plurality opinion). A court considering a fundamental alteration defense "must take into account financial and other logistical limitations on a state's capacity to provide integrated services to the disabled." *Townsend v. Quasim*, 328 F.3d 511, 519 (9th Cir. 2003). But "[b]udgetary concerns alone . . . do not sustain a fundamental alteration defense." *A.H.R.*, 469 F. Supp. 3d at 1045 (citing *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1183 (10th Cir. 2003)). The Ninth Circuit has described this as "an intensively fact-based inquiry." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 1001 (9th Cir. 2000), *aff'd*, 532 U.S. 661 (2001)).

The Court agrees with Defendant, at least on this preliminary record, that requiring the payment of parents would be a fundamental alteration to the State's current program. The relief that Plaintiffs request is currently foreclosed by Washington law, which forbids the State from paying parents to be individual care providers for their children. WAC 388-115-0540(1)(b). A 2023 report from the Washington State Department of Social and Health Services outlined additional costs, policies, and procedures that would be required to implement such a program, including monitoring and support resources to "ensure[] that the provision of services by a legally responsible individual is in the best interest of the participant" and "that payments are made only for services rendered as compared to support provided because the provider is the parent." Dkt. 39 at 28–32. And as Defendant points out, the Washington State Legislature has recently rejected similar changes to the law. Dkt. 34 at 23–24; *see* H.B. 1200, 69th Leg., 2025 Reg. Sess. (Wash. 2025). Plaintiffs essentially ask the Court to legislate a program that the State's lawmaking body has declined to create. This would be a significant departure from Washington's current program and would create implementation challenges that are best suited for consideration by the Washington State Legislature.

In lieu of paying the parents of O.S. and W.M. for the services that they are currently providing, the State must instead correct the very problem that has required these parents to undertake this effort: the failure to meet the approved number of PDN hours. The Court does not "mandate detailed or burdensome procedures for compliance." *A.H.R.*, 469 F. Supp. 3d at 1049 (quoting *Katie A.*, 481 F.3d at 1157). Instead, counsel for Plaintiffs and Defendant must meet as soon as practicable to develop a plan for implementation of this preliminary injunction, as well as provide the Court with a joint status report detailing their efforts to do so.

## V. CONCLUSION

The motion for a preliminary injunction (Dkt. 18) is GRANTED IN PART and DENIED IN PART.

1. Pursuant to Federal Rule of Civil Procedure 65(a), Defendant shall take all actions within his power necessary for Plaintiffs O.S. and W.M. to receive their approved private duty nursing hours. To effectuate this requirement, counsel for Defendant and Plaintiffs shall meet and confer as soon as practicable and develop a plan for implementing the preliminary injunction. Among other things, the plan must identify the responsibilities of Defendant, the need for additional providers, methods of finding, securing, and retaining additional providers, and a timeline for accomplishing needed tasks. However, Defendant may not defer or delay his efforts to provide the required private duty nursing care to these Plaintiffs while the parties are developing the plan. In negotiating the plan, counsel shall diligently and in good faith take into account and apply this Court's rulings and observations.

2. Not later than 30 days from the entry of this order, Defendant and Plaintiffs shall file a joint status report regarding the status of effectuating the preliminary

injunction. That status report must include a schedule going forward for regular updates to the Court.

3. Because Defendant did not request a bond under Federal Rule of Civil Procedure 65(c), and because the balance of equities overwhelmingly favors W.M. and O.S., the Court exercises its discretion and declines to impose a bond requirement.

4. The motion with respect to Plaintiffs C.F., W.J., and J.P. is denied.

Dated this 21st day of July, 2026.

Tiffany M. Cartwright
United States District Judge